United States District Court
Middle District of Florida
Jacksonville Division

**JOSHUA BRADFORD,**

    *Plaintiff,*

v.                               NO. 3:21-cv-513-MMH-PDB

**ANCIENT CITY GROUP LLC,**

    *Defendant.*

## Report & Recommendation

In this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, the parties move under *Lynn's Food Stores, Inc., v. United States ex rel. U.S. Department of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982), for approval of a settlement and dismissal with prejudice. Doc. 33.

## Background

In May 2021, Joshua Bradford filed this action, bringing a single claim for an alleged violation of the FLSA for failing to pay overtime compensation. Doc. 1. In August 2021, he amended the complaint, adding claims for breach of contract and unjust enrichment. Doc. 18.

In the amended complaint, Bradford alleges the following facts. Defendant Ancient City Group LLC employed him for one year. Ancient City was an enterprise engaged in commerce or in the production of goods for commerce. Ancient City was a foreign limited liability company that provided services to out-of-state clients. Ancient City's annual gross revenue exceeded

$500,000. Bradford regularly worked at least forty-five hours a week, but Ancient City paid him for only some of his overtime hours. Ancient City failed to pay him for time spent driving between job sites. Ancient City regularly required him to work through lunch but automatically deducted an hour of pay for a lunch break. Ancient City failed to maintain proper time records. Ancient City failed to consult with counsel, the Department of Labor, or an accountant to determine whether Ancient City was complying with the FLSA. Doc. 18 ¶¶ 2, 3, 9, 10, 11, 15, 25, 27, 28, 31, 33, 36, 38, 39, 40, 41.

In August 2021, Ancient City answered the amended complaint. Doc. 19. Ancient City admits it employed Bradford. Ancient City admits its annual gross revenue exceeded $500,000. And Ancient City admits Bradford occasionally worked more than forty hours a week. Doc. 19 ¶¶ 2, 8, 9, 15, 25, 27, 38(a).

Ancient City denies it was an employer, and Bradford was an employee, within the meaning of the FLSA. Ancient City denies it was an enterprise engaged in commerce or in the production of goods for commerce. Ancient City denies it was a foreign limited liability company. Ancient City denies it provided services to out-of-state clients. Ancient City denies it failed to compensate Bradford fully for overtime hours. And Ancient City denies it failed to maintain proper time records. Doc. 19 ¶¶ 3, 6, 7, 10, 11, 14, 28, 31, 33, 36, 38(b), 38(c).

Ancient City raises two defenses: (1) the Court lacks subject matter jurisdiction because Ancient City is not an enterprise engaged in commerce or in the production of goods for commerce, is not a foreign corporation or company, does not work outside Florida regularly, and does not produce

commerce that travels outside Florida;[1] and (2) Ancient City acted in good faith for all hours worked. Doc. 19 at 7–8.

In June 2021, Bradford answered the Court's interrogatories. Doc. 13. He represents the following facts. Ancient City employed him from April 1, 2019, to April 2, 2020. His immediate supervisors were Austin Sterling and Christopher Smith. He regularly started work at 7:00 a.m. and continued until his job list was done or he was told he could be done. He worked as a helper and a foreman. His pay progressed from $12 an hour to $17 an hour. Ancient City owes him $15,153.70 in unliquidated damages and $26,533.71 in liquidated damages. He orally complained about the alleged FLSA violations to Sterling and Smith, and he was told Ancient City was complying with the law. People with Ancient City told him, "Too bad," "We do not have to pay for that," and "When I go through your time sheets every day, if you take a lunch or not, I will be deducting an hour from your time as we need to show that on our records since it is the law." Ancient City tracks time through "TimeStation," and his paychecks "were handled by Paychex." Each company vehicle has a GPS to track movement. Doc. 13 ¶¶ 1, 2, 3, 4, 5, 6, 7, 8, 9, 10.

In July 2021, Ancient City filed a verified summary of Bradford's hours worked. Doc. 14. Ancient City represents the following facts. Bradford worked

---

[1] Individual or enterprise coverage under the FLSA is an element of a plaintiff's claim for relief, not a jurisdictional threshold. *Biziko v. Horne*, 981 F.3d 418, 419 (5th Cir. 2020); *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 33 (1st Cir. 2007); *Rodriguez v. Diego's Rest., Inc.*, 619 F. Supp. 2d 1345, 1350 (S.D. Fla. 2009). Although the Eleventh Circuit has not expressly held individual or enterprise coverage under the FLSA is an element of the plaintiff's claim for relief, not a jurisdictional threshold, the Supreme Court's opinion in *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006), which held a similar requirement under Title VII is not jurisdictional, compels that holding. *See generally Definitive Marine Survs., Inc. v. Tran*, 339 F. Supp. 3d 1292, 1298–1302 (M.D. Fla. 2018) (surveying Supreme Court precedent on distinction between jurisdictional limitations and claims-processing rules).

a total of 1,943 hours. His hourly pay rate increased from $12 to $17. His total wages at a regular rate were $28,506.62, and his total wages at an overtime rate were $2,539.31. Doc. 14 ¶¶ 1, 2, 3.

In November 2021, the parties settled. Doc. 28. In January 2021, they filed the current motion for approval of the settlement, Doc. 33, and the settlement agreement, Doc. 33-1.

## Motion

Ancient City agrees to pay Bradford $2,000 in wages, less appropriate taxes and withholdings, and $2,000 in liquidated damages. Doc. 33-1 ¶ 3. Ancient City agrees to pay Bradford's attorney $4,000 in attorney's fees and costs. Doc. 33-1 ¶ 3. The parties explain they negotiated attorney's fees and costs separately. Doc. 33 at 5; Doc. 33-1 ¶ 3.

The parties assert disputed issues are present, including liability and damages. Doc. 33 ¶ 5. They describe the efforts involved in settling—including document review and multiple discussions—and agree the settlement is "a fair and reasonable compromise." Doc. 33 ¶¶ 5, 6. They explain:

> [T]he Parties reviewed the relevant records related to Plaintiff's employment with Defendant, and engaged in several substantive conversations. Furthermore, Defendant's vehicles, utilized by Plaintiff during his employment, were equipped with GPS, which permit the Defendant to track and located the vehicles.
>
> Based on the relevant records and GPS data, the only money owed to Plaintiff, if any, would have been related to the time spent driving back to Defendant's office at the end of the day.

Doc. 33 at 4.

The parties ask the Court to approve the agreement and dismiss the case with prejudice. Doc. 33 at 5.

## Authority

Passed in 1938, the FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[ ] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).

If an employee proves his employer violated the FLSA, the employer must pay him unpaid wages for up to two years or, if the employer intentionally violated the law, for up to three years, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988); an equal amount as liquidated damages (absent the employer's proof of good faith and reasonable grounds for believing it was not violating the FLSA, 29 U.S.C. § 260); and attorney's fees and costs, 29 U.S.C. § 216(b).

To foster the FLSA's purpose and to prevent an employer from using its superior bargaining position to take advantage of an employee, the Eleventh Circuit in *Lynn's Food* placed limits on the ability of private parties to settle a FLSA case. *See Lynn's Food*, 679 F.2d at 1353–55 (establishing the limits); *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306–07 (11th Cir. 2013) (describing *Lynn's Food*, observing the case involved employees and their current employer, and holding *Lynn's Food* also applies to cases between former employers and employees). Parties must present their agreement to the court, and the court must scrutinize the agreement for fairness. *Nall*, 723 F.3d at 1306–07.

To approve a settlement, a court must find the settlement is fair, adequate, reasonable, and not the product of collusion. *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Factors pertinent to this finding include whether there was collusion or fraud; the complexity, expense, and likely duration of the case; the stage of the proceedings and the discovery completed; the probability of the plaintiff's success on the merits; the range of possible recovery; and the opinions of counsel. *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994). If the agreement reflects a fair and reasonable compromise over a disputed issue, the court may approve it to promote the policy of encouraging settlement. *Lynn's Food*, 679 F.2d at 1355.

The "FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). If the parties negotiated attorney's fees separately from the amount to the plaintiff, the court need not undertake a lodestar review of the attorney's fees for reasonableness. *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

**Analysis**

Considering the parties' representations and a review of the amended complaint, the answer and defenses, the answers to the Court's interrogatories, the verified summary, and the motion to approve the settlement agreement, the agreement is fair, adequate, reasonable, and not the product of collusion.

The parties are represented by counsel. There is no stated or apparent collusion or fraud. Disputed issues are present. Resolving the disputes without settlement would require costly discovery and continued litigation. The

6

plaintiff would risk receiving nothing. The agreement includes compensation for both unpaid wages and liquidated damages.

The motion does not ask the Court to retain jurisdiction to enforce the agreement. The agreement contains nothing commonly found objectionable.[2] Approval is warranted.

On attorney's fees and costs, given the parties' representation that they agreed on the fees separately from the amounts to Bradford, the Court need not undertake a lodestar review.

## Consent

To expedite the resolution of the current motion, the parties still have an opportunity to consent to the undersigned conducting the remaining proceedings in this action, including entry of judgment. To do so, the parties must jointly execute and file the consent form attached to this report and recommendation (using a single form rather than separate forms). Of course, the parties remain free to withhold consent without adverse substantive consequences. *See* Fed. R. Civ. P. 73(b)(2).

---

[2] For example, some judges will strike a non-disparagement provision because its placement of a prior restraint on one's ability to speak freely about the case contravenes public policy and the First Amendment. *See, e.g.*, *Loven v. Occoquan Grp. Baldwin Park Corp.*, No. 6:14-cv-328-CEM-TBS, 2014 WL 4639448, at *3 (M.D. Fla. Sept. 16, 2014). Some judges will strike a no-reemployment provision because its impact could be substantial and result in an unconscionable punishment for asserting FLSA rights. *See, e.g.*, *Nichols v. Dollar Tree Stores, Inc.*, No. 1:13-cv-88 (WLS), 2013 WL 5933991, at *5–6 (M.D. Ga. Nov. 1, 2013). Some judges will not approve an agreement to settle a FLSA claim that includes a general release because, without an indication of the value of the released claims, the fairness and reasonableness of the compromise cannot be determined. *See, e.g.*, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351−52 (M.D. Fla. 2010).

## Recommendation

The undersigned recommends:

1. **granting** the parties' motion for approval of the settlement, Doc. 33, and approving the settlement as a fair and reasonable resolution of disputed issues;

2. **dismissing** the case with prejudice; and

3. **directing** the Clerk of Court to close the file.

## Deadlines for Objections and Responses to Objections

"Within 14 days after being served with [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to specifically object to the proposed findings and recommendations alters the scope of review, including waiver of the right to challenge anything to which no specific objection was made. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3); 11th Cir. R. 3-1.

**Entered** in Jacksonville, Florida, on February 15, 2022.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

Attachment: AO Form 85